United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 4, 2004**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 03-30115
_____

JAYSUKH ZALAWADIA,

Petitioner - Appellant,

versus

JOHN ASHCROFT, U.S. ATTORNEY GENERAL; JAMES ZIGLAR; LYNNE
UNDERDOWN; BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED
STATES DEPARTMENT OF JUSTICE,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

Before JOLLY and WIENER, Circuit Judges, and WALTER, District
Judge.[*]

E. GRADY JOLLY, Circuit Judge:

Jaysukh Zalawadia was deported to India while his habeas
appeal challenging the legality of the deportation order was
pending. This appeal requires us to determine the effect
deportation of a habeas petitioner has on (1) our ability to
exercise continued jurisdiction over that petition and (2) the
nature and scope of habeas relief available to an alien deported
under a defective deportation order. For the reasons explained
below, we hold that we have habeas jurisdiction over this petition.

_____

[*]District Judge, United States District Court for the Western
District of Louisiana, sitting by designation.

We vacate this deportation order and also hold that, because of the limited nature of habeas, we lack authority, in this habeas action, to grant relief beyond simply vacating the defective order under which he was deported. The petitioner, whose liberty interests and rights are now no longer encumbered by the deportation order, must turn to other procedural remedies, if any, for further relief.

I

Jaysukh Zalawadia, a native and citizen of India, was admitted into the United States in September 1988. In 1995, he pleaded guilty to a charge of burglary and felony theft and was sentenced to two years probation and required to pay restitution. At the time, his guilty plea had no immediate effect on his immigration status. Under the Immigration and Nationality Act (INA) as it then existed, conviction of these offenses did not render him subject to deportation; they were not deportable "aggravated felonies" as defined by the Act[1] nor did they meet the conditions necessary to constitute deportable "crimes of moral turpitude."[2] These

---

[1]The INA defined "aggravated felony" as "murder, any illicit trafficking in any controlled substance (as defined in section . . . including any drug trafficking crime . . . or any illicit trafficking in any firearms or destructive devices . . . or any crime of violence . . . for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years . . ." 8 U.S.C. § 1101(a)(43)(1994 ed.).

[2]Conviction of a crime of moral turpitude was a deportable offense only when the conviction came within five years after the original date of entry and resulted in confinement in prison for one year or longer. 8 U.S.C. § 1251(a)(2)(A)(i). Zalawadia's conviction satisfies neither of these conditions.

convictions did create the possibility that Zalawadia could be rendered inadmissible should he leave the country and attempt to re-enter; under INA § 212(a)(2)(A)(i)(I), 8 § U.S.C. 1182(a)(2)(A)(i)(I), a lawful permanent resident who had been convicted of a "crime involving moral turpitude" would be deemed inadmissible should that resident leave the United States and later seek reentry. However, the Supreme Court had interpreted this condition only to apply to travel outside the United States that was not "brief, casual or innocent." Rosenberg v. Fleuti, 374 U.S. 449 (1963) (holding that lawful permanent residents who travel abroad should be admitted, even if otherwise inadmissible, if their travel was "brief, casual, or innocent"). In addition, the INA contained a provision granting the Attorney General of the United States the broad discretion to admit aliens who were otherwise excludable on the basis of a prior criminal conviction. Under § 212(c) of that act, any lawfully admitted alien "who temporarily proceeded abroad voluntarily . . . and who [is] returning to a lawful unrelinquished domicile of seven years" was eligible for this discretionary waiver. INA § 212(c), 8 U.S.C. § 1182(c) (1994 ed.). Thus, under the law as it then existed, Zalawadia's criminal conviction would affect his immigration status only if his travel outside the United States was not "brief, casual or innocent" and even then, he would be eligible to apply for discretionary relief with the Attorney General could he prove seven years of unrelinquished domicile.

3

The passage of the Antiterrorism and Effective Death Penalty Act (AEDPA) and Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) in 1996 had two specific effects on Zalawadia's immigration status. First, the IIRIRA's amendments to the INA ostensibly superseded the rule announced in Fleuti; under the amended INA, 8 U.S.C. § 1101(a)(13)(C)(v), as interpreted by the Board of Immigration Appeals (BIA), a lawful permanent resident could be barred from reentry regardless of the nature of his travel outside the country. See In Re Collado, 21 I. & N. Dec. 1061 (BIA Dec. 18, 1997).[3] In addition, the IIRIRA specifically repealed § 212(c), replacing it with § 240(A), 8 U.S.C. § 1259b. Zalawadia was no longer eligible for a discretionary waiver from the Attorney General under this new provision.[4]

Zalawadia soon felt the effects of these statutory changes. In 1998, he briefly left the country on a business trip abroad. Upon returning, because the INS had concluded that Fleuti's rule no

---

[3]It appears no court has yet reviewed the BIA's determination that Fleuti's rule was superseded by statute. There is no need for us to examine this conclusion in any detail, however, as it has not been challenged here. All that is important in this case is that immigration officials assumed that Fleuti no longer applied, leading them to detain Zalawadia when he attempted to reenter the country.

[4]The new provision considerably restricted the class of aliens eligible for discretionary relief from the Attorney General. Under its terms, the Attorney General was barred from granting waivers to aliens who, among other things, had been convicted of an aggravated felony. 8 U.S.C. § 1229b(a). The IIRIRA enlarged the definition of offenses constituting aggravated felonies to include, *inter alia*, burglary and theft offenses for which a one-year term of imprisonment is imposed. 8 U.S.C. § 1101(a)(43)(G).

longer applied, he was treated as an arriving alien, detained, and issued a Notice to Appear charging him with inadmissibility as a result of his 1995 convictions. In the original removal proceedings before an immigration judge, Zalawadia conceded removability but requested cancellation of his removal order pursuant to § 240A(a) of the INA -- the provision that had replaced § 212(c). The immigration judge found that Zalawadia's convictions prevented him from meeting the residency requirements for cancellation of removal (seven years of unrelinquished lawful domicile) and ordered him removed.

Zalawadia filed a timely appeal to the BIA. There, apparently for the first time, he contended that he was entitled to claim eligibility for a waiver under the old Immigration and Nationality Act, § 212(c). That appeal was dismissed, because the BIA found that the IIRIRA's repeal of § 212(c) should be applied retroactively. Zalawadia's motion to reconsider and reopen was also dismissed.

Zalawadia then filed a petition for a writ of habeas corpus in federal district court.[5] There, he contended that his detention and removal order were illegal because the BIA had improperly applied retroactively the provisions of the IIRIRA, thereby

---

[5]Before filing his habeas petition, Zalawadia filed an appeal of the BIA's decision with this court and also sought a stay of removal. We dismissed the petition for lack of jurisdiction and denied the stay motion. See Zalawadia v. INS, No. 99-60593 (5th Cir. Oct. 21, 1999).

erroneously determining him to be ineligible for § 212(c) relief. The habeas petition was dismissed, as was Zalawadia's request for a stay of the removal order. Zalawadia appealed to this court, but while his appeal was pending, he was deported. We then dismissed his appeal. That dismissal did not end this case, however.

Following his deportation and our dismissal of his appeal, Zalawadia filed a petition for a writ of certiorari with the Supreme Court, which was granted. The Supreme Court vacated this court's judgment in the light of INS v. St. Cyr, 533 U.S. 289 (2001), a 2001 case holding, in relevant part, that the IIRIRA did not apply retroactively. We then vacated the decision of the district court and remanded for further consideration consistent with St. Cyr.

After remand, a magistrate judge recommended that Zalawadia's habeas petition be denied because he had not accrued seven years of unrelinquished lawful domicile at the time of the plea agreement in his criminal case -- a precondition to eligibility for § 212(c) relief. See 8 U.S.C. § 1182(c) (1994 ed.). In short, the magistrate found that Zalawadia was not entitled to habeas relief because the order of deportation did not violate Zalawadia's rights under the statute. The district court adopted the magistrate's recommendation and this appeal followed.

II

Zalawadia now contends that the district court erred in considering the merits of his claim of eligibility for relief

instead of remanding the matter to the BIA (which had not had the chance to consider his arguments on the seven-year domicile requirement), as it should have under INS v. Ventura, 537 U.S. 12 (2002).[6]  Accordingly, he urges us to grant habeas relief by reversing and vacating the district court judgment and remanding to that court with instructions that it remand the case to the BIA, directing it to consider his claims under § 212(c).

In response, the government concedes that the district court committed error in considering Zalawadia's eligibility for relief de novo; it concedes that, in accordance with Ventura, such questions are for the BIA to determine in the first instance. Irrespective of whether the district court erred in that respect, its error is irrelevant to a determination of this appeal.  More fundamentally, the government contends that the district court had no habeas jurisdiction to hear this case in the first place.  It asserts that because Zalawadia has been deported, he cannot satisfy the "in custody" requirement for federal habeas jurisdiction. Alternatively, the government contends that even if habeas jurisdiction does exist, Zalawadia is still not entitled to any relief as removed aliens are not authorized by statute or

---

[6]In Ventura, the Supreme Court held that federal courts are not generally empowered to conduct initial inquiries into matters that statutes place primarily in agency hands.  In such cases, the agencies perform the role of initial factfinders; federal courts may only properly involve themselves after the agencies have first considered the underlying merits of the claim, and then only in an appellate review fashion.  537 U.S. at 16-17.

regulation to apply for § 212(c) relief from abroad. We disagree that we lack habeas jurisdiction. We do agree, however, that we do not have authority as a habeas court to order the relief Zalawadia seeks, albeit for different reasons than those urged by the government. We hold that relief in this habeas proceeding is limited to vacating the order of deportation.

III

As a threshold matter, we must determine whether the district court had habeas jurisdiction over this case. We hold that it did.

The government contends that habeas jurisdiction no longer exists here because Zalawadia has been deported and is no longer in custody; accordingly, it argues that he is unable to satisfy the "in custody" requirement of federal habeas jurisdiction. This argument, however, is foreclosed by our own precedent as well as the unanimous precedent of our sister circuits.

The Supreme Court has made it clear that the "in custody" determination is made at the time the habeas petition is filed. Spencer v. Kemna, 523 U.S. 1, 7 (1998); Carafas v. LaVallee, 391 U.S. 234, 237-38 (1968). Moreover, this court has previously held that this rule applies to petitioners who have been deported in the same way it applies to any other habeas petitioner no longer in custody. In Max-George v. Reno, 205 F.3d 194 (5th Cir. 2000), rev'd on other grounds, 533 U.S. 945 (2001), this court exercised habeas jurisdiction over a deported alien where that alien had been in custody at the time the suit was filed. When confronted with

8

similar facts, our sister circuits have reached the same conclusion, uniformly holding that a deportation subsequent to the filing of the petition in habeas corpus does not deprive the courts of jurisdiction. See Leitao v. Reno, 311 F.3d 453, 455 (1st Cir. 2002); Chong v. District Director, INS, 264 F.3d 378 (3d Cir. 2001); Smith v. Ashcroft, 295 F.3d 425 (4th Cir. 2002); Zegarra-Gomez v. INS, 314 F.3d 1124 (9th Cir. 2003).

The government nevertheless objects to the district court exercising jurisdiction, arguing that Zalawadia's changed condition, i.e., his deportation, has caused him to lose his "in custody" status. It notes that the Supreme Court has never held that a habeas petitioner's "in custody" status, once established, may never be lost as a result of an event occurring during the pendency of the habeas litigation. Although this is certainly an accurate statement of law, it incorrectly conflates habeas' "in custody" requirement with the requirement that a petition not be moot. As the Supreme Court explained in Spencer, for a court to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that he was in custody at the time he filed the petition and that his subsequent release has not rendered the petition moot, i.e., that he continues to present a case or controversy under Article III, § 2 of the Constitution. Spencer, 523 U.S. at 7. The petitioner presents an Article III controversy when he demonstrates "some concrete and continuing

9

injury other than the now-ended incarceration" -- a "collateral consequence of the conviction." Id. (internal quotations removed).

In Max-George, we dealt with a similar question. There, the petitioner had been deported during the pendency of his habeas petition. The government apparently conceded the fact that the petitioner had filed the petition while in custody, but argued that his subsequent deportation had rendered it moot. We rejected that argument, finding that the petitioner continued to face a concrete collateral consequence of his deportation -- a statutory ten-year waiting period before he was eligible for reentry -- and therefore, that the petition was not moot. Max-George, 205 F.3d at 196. Other circuits have reached similar conclusions, holding that the bar on readmission of a removed alien is a legally cognizable collateral consequence that preserves a live controversy even after deportation of the petitioner. See Leitao, 311 F.3d at 455; Chong, 264 F.3d at 385; Smith, 295 F.3d at 428; Zegarra-Gomez, 314 F.3d at 1127.

Here, it is undisputed that Zalawadia's deportation bars him from seeking reentry into the United States for a period of five years. See 8 U.S.C. § 1182(a)(9)(A)(I). This penalty constitutes a cognizable collateral consequence; as such, his petition presents a live case or controversy and is not moot. Accordingly, because Zalawadia's petition was filed when he was in custody and is not moot, we hold that we have habeas jurisdiction this case.

IV

10

The government contends that even if we do have jurisdiction over this matter, this court should affirm the district court's judgment because no statute or regulation authorizes an alien who has been removed from the United States to apply for section 212(c) relief. The government notes that according to federal regulations governing the BIA, "a motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States." 8 C.F.R. § 1003.2(d). It asserts that upon lawful execution of his removal order, the removal case against Zalawadia, for all substantive purposes, was completed. Accordingly, it argues that he is unable to bring this claim before the BIA because federal regulations bar the BIA from hearing it. This argument seems akin to a mootness argument -- that his removal mooted any claim for relief that might otherwise be available to him.

In any event, finally resolving this particular question of the federal regulation is not necessary in order to reach a conclusion concerning Zalawadia's habeas petition. The basic question before this court on habeas review is a narrow one: was Zalawadia's detention illegal? If it was, we must grant his petition and apply the appropriate remedy. By granting certiorari, reversing, remanding, and citing St. Cyr, the Supreme Court has already made clear that the deportation order under which Zalawadia had been detained was legally flawed because the BIA improperly

11

applied the IIRIRA's restrictive provisions retroactively. It follows that, like St. Cyr, Zalawadia's detention based on that order, which deprived him of the discretionary benefits of the applicable statute, was illegal. Moreover, as we have explained, although Zalawadia has been released from detention, he still faces concrete collateral consequences arising out of that illegal order. Accordingly, Zalawadia is entitled to appropriate habeas relief quite aside from how a particular government regulation may apply to him now. The question is what relief is appropriate in this habeas proceeding.

Zalawadia contends that the acknowledgment of the invalidity of the order of deportation requires a remand to the BIA with instructions to hold a new deportation proceeding in which Zalawadia's request for § 212(c) relief may be properly considered. After examining his arguments, however, we conclude that the only form of habeas relief appropriate here is for the district court to vacate the original deportation order. Ordering any other relief would be inconsistent with the limited authority a habeas court possesses. We must underscore what this case is and what it is not. This case is <u>not</u> the direct appeal of the BIA's decision, in which we could review the full scope of Zalawadia's claims and order the BIA to correct its mistakes. The IIRIRA has indeed stripped us of such jurisdiction.[7] This fact significantly narrows

---

[7]Under the IIRIRA, habeas actions are the only avenue of appeal open to an individual in Zalawadia's position. The IIRIRA

12

the scope of our review and, by extension, the nature of the relief available.

In St. Cyr, the Supreme Court explicitly acknowledged the significant distinction between direct review and habeas review in the immigration context. Specifically, the Court stated that "it is the scope of inquiry on habeas corpus that differentiates habeas review from judicial review." 533 U.S. at 312 (quoting Heikkila v. Barber, 345 U.S. 229, 236 (1953)). The Court noted that the pre-IIRIRA statutory regime allowed for direct review of immigration decisions, observing that this type of review bestowed upon courts the "broad authority to grant declaratory and injunctive relief in immigration cases." Id. at 309. In contrast, in the wake of the IIRIRA's withdrawal of such direct review jurisdiction, the sole form of review available to aliens protesting the legality of their deportation is habeas. Id. Under this new, habeas-only regime, "the limited role played by the courts" is "far narrower than the judicial review authorized by the [the old statutory structure]." Id. at 312.

Apart from acknowledging that "the scope of review on habeas is considerably more limited than on [direct review]," St. Cyr did

---

specifically states that courts of appeals have no authority to engage in direct review of a final order of deportation against an alien who is removable by reason of committing a criminal offense like the one Zalawadia committed here. See 8 U.S.C.A. § 1252(a)(2)(c). The Supreme Court has held that this statute did not, however, preclude individuals from seeking habeas review of such an order. See St. Cyr, 533 U.S. at 294-315.

13

not discuss precisely what those limits are. These limits, however, are readily identified by examining the nature of habeas corpus and analyzing Supreme Court case law in this field. As its Latin meaning suggests, the writ of habeas corpus performs a precise and specific function: it forces the government to justify a decision to hold an individual in custody. "The very office of the Great Writ, its only function, is to inquire into the legality of the detention of one in custody." Heflin v. United States, 358 U.S. 415, 421 (1959); see also Zadvydas v. Davis, 533 U.S. 678, 699 (2001) (holding that the "historic purpose of the writ [is] to relieve detention by executive authorities without judicial trial") (quoting Brown v. Allen, 344 U.S. 443, 533 (1953) (Jackson, J., concurring in result)). A habeas court must thus confine the scope of its review to considering the legality of the custody at issue. Habeas exists "to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power; . . . *it can act only on the body of the petitioner*." Fay v. Noia, 372 U.S. 391, 430-31 (1963) (emphasis added). This means that, unlike direct review where the correctness of a court or agency order is comprehensively and directly before the court, a habeas court reviews the correctness of such an order only insofar as it relates to "detention simpliciter," id. at 430. In other words, habeas is not shorthand for direct review. Unlike direct review where courts

14

have "broad authority" to grant relief, St. Cyr, 533 U.S. at 309, habeas is not "a generally available federal remedy for every violation of federal rights," Lehman v. Lycoming County Children's Services Agency, 458 U.S. 502, 510 (1982), nor can it "be utilized to review a refusal to grant collateral administrative relief, unrelated to the legality of custody." Amanullah v. Nelson, 811 F.2d 1, 17 (1st Cir. 1987).

Habeas' singular focus on the legality of detention not only constrains the scope of a habeas court's review, it constrains both the class of individuals to whom the writ is available and the nature of relief that court may afford if and when the writ issues. As we previously indicated, only individuals who are in custody at the time of filing may petition the court for habeas relief. The relief available under the writ is similarly limited.

The traditional form of relief available under habeas is discharge of the applicant from current physical custody. See, e.g., Allen v. McCurry, 449 U.S. 90, 98 n.12 (1980) (noting that the "unique purpose of habeas corpus" is "to release the applicant for the writ from unlawful confinement"). Habeas relief, however, is not confined to this form alone; over the years, its mandate has become broader. Carafas v. LaVallee, 391 U.S. 234, 239 (1968). See also Preiser v. Rodriguez, 411 U.S. 475, 487 (1973) (stating that "habeas corpus relief is not limited to immediate release from illegal custody"). Where an individual is no longer in custody (but was at the time he filed the action), the Court has recognized

15

that the individual may be facing collateral legal restraints on his liberty, flowing from the original order that placed him in detention. Such restraints include legal ineligibility to serve on a jury, vote, hold office or operate certain businesses. Spencer, 523 U.S. at 8. See also Fiswick v. United States, 329 U.S. 211, 221-23 (1946) (conviction rendered petitioner liable to deportation and denial of naturalization, and ineligible to serve on a jury, vote, or hold office); United States v. Morgan, 346 U.S. 502 (1954) (conviction had been used to increase petitioner's current sentence under state recidivist law); Ginsberg v. New York, 390 U.S. 629, 633 n.2 (1968) (conviction rendered petitioner liable to revocation of his license to operate luncheonette business). Where such collateral consequences exist, the Court has indicated that an appropriate remedy is to vacate or modify the underlying illegal judgment or order under which the petitioner is detained.[8]

Thus, Supreme Court jurisprudence in this field indicates that habeas relief relates directly to the underlying nature of the writ itself -- undoing current or future legal restraints on a person's freedom flowing from an illegal detention. It cannot be utilized to bootstrap other claims for relief unless necessary to assure or to protect the right to the personal liberty interest that is at issue. Amanullah, 811 F.2d at 17. In other words, habeas

---

[8]The habeas remedy removes the disability that may be a bar to the exercise of liberty interests; it does not order the deprived benefit be automatically granted by the government.

specifically is not a tool that can be broadly employed to restore the habeas petitioner to his or her *status quo ante* beyond freeing him from the restraints on liberty arising directly from the illegal order or judgment.  Thus, for example, a habeas court may have the power to vacate a conviction on the basis of police or prosecutorial misconduct; however, the habeas court would not have the power to award damages for the time spent in prison or, for example, to order a state agency to hold a reinstatement hearing for the purposes of determining the rights to a job lost because of the conviction.  Although there may be other causes of action or other procedural remedies under which such relief would be available, it would not be under habeas, which, unlike remedies involving the direct review of illegal or unconstitutional government acts, has its essence in "detention simpliciter." <u>Fay</u>, 372 U.S. at 430.

Therefore, Zalawadia's contention that, in granting the writ, the district court, in this proceeding, should order the BIA to hold a new hearing to consider his rights under § 212 to determine whether he should be deported anew is rejected as beyond the bounds of reviewing his "detention simpliciter." Having reached the conclusion that vacating the deportation order is the beginning and end of the habeas authority we have, we do not need to address Zalawadia's entitlement to other forms of relief in this habeas

action.  These include his request that we order the INS to readmit him into the country for the purposes of a § 212(c) hearing.[9]

We should be clear:  In reaching this conclusion, we do not suggest that Zalawadia has no way of obtaining other non-habeas remedies.  Once his removal order has been vacated, he may be eligible to apply for reentry with the BIA.  That question is not before us, however.  Once again, we are not engaging in direct review.  The only question presented in this habeas case concerns the legality of the order upon which Zalawadia's detention was based.  By acknowledging the illegality of that order and his detention and by vacating the order, thereby removing the cognizable collateral legal consequences of that detention, the federal habeas court has answered and addressed this question.

V

We sum up:  Because Zalawadia filed his habeas petition while he was in custody and continues to face a collateral legal consequence of the order placing him there, we hold that the

---

[9]Our authority to order Zalawadia to be readmitted into the country is not only constrained by the nature of habeas review; this case also concerns subject matter in which courts are most reluctant to involve themselves.  The Supreme Court has long recognized that power over aliens is "a fundamental sovereign attribute . . . largely immune from judicial control," Shaughnessy v. Mezei, 345 U.S. 206, 210 (1953), and is "of a political character and therefore subject only to narrow judicial review." Hampton v. Mow Sun Wong, 426 U.S. 88, 101 n.21 (1976).  See also Harisiades v. Shaughnessy, 342 U.S. 580, 596-97 (1952) (Frankfurter, J., concurring) ("The conditions for entry of every alien . . . have been recognized as matters solely for the responsibility of the Congress and wholly outside the power of this Court to control.").

18

district court had habeas jurisdiction. We also hold, however, that a habeas court lacks the authority to grant the relief Zalawadia seeks -- either to order the INS to readmit Zalawadia into the country or to direct the BIA to conduct a new deportation proceeding on Zalawadia's behalf -- as either of these forms of relief are beyond the discrete nature of a habeas action. The sole remedy available under habeas here is for the district court to vacate the removal order. Accordingly, we reverse and vacate the judgment of the district court denying habeas relief. We remand with instructions that the district court enter an appropriate order that vacates its judgment and grants the petition for habeas corpus but only to the extent of vacating the BIA's prior order of deportation against Zalawadia.[10]

---

[10]We fail to understand the dissent's strenuous contention that our holding in this case "render[s] nugatory the Supreme Court's express directive in its remand of this case to us." Dissent at p. 1. In its succinct remand of this case, the Court stated: "Judgment vacated, and case remanded to the United States Court of Appeals for the Fifth Circuit for further consideration in light of INS v. St. Cyr." Zalawadia v. Ashcroft, 533 U.S. 943 (2001). The cursory and non-specific nature of the remand in this case is typical of other remands of cases pending on certiorari before the Supreme Court that are affected by a Court decision issued in another analogous case. In characteristic fashion, the remand here simply directed lower courts to reconsider Zalawadia's case in the light of the recently-decided St. Cyr and, implicitly, to grant any appropriate corresponding relief. This course is precisely what we have followed in this case. We have determined that St. Cyr does control, that the order of deportation issued against Zalawadia was invalid, and that the appropriate form of corresponding relief is the vacatur of this order. Thus, while the dissent may disagree with our conclusions concerning whether vacatur is the appropriate form of corresponding relief, there is simply no basis for its contention that our decision is inconsistent or in any other way "irreconcilable" with the Supreme Court's remand in this case.

REVERSED, VACATED and REMANDED WITH INSTRUCTIONS.

---

Secondly, we are a bit baffled by the dissent's claim that Zalawadia is entitled to "more" habeas relief than we have granted him.  Indeed, we cannot conceive the form such additional relief would take, short of ordering the defendants to readmit Zalawadia into the country -- relief that the dissent explicitly concedes is unavailable.  The dissent's proposed "additional" relief -- specifically, "an opportunity to plead his case to the BIA . . . [and] seek 212(c) relief" -- is not additional at all: The best result Zalawadia could obtain from such an opportunity is a BIA ruling that he indeed had been entitled to a waiver of deportation, that the order of deportation was error, and a corresponding order vacating the erroneous deportation order against him; yet this is precisely the relief we have already granted him -- the vacatur of the deportation order.  Thus, the dissent's contention that we are unjustifiably and improperly circumscribing the scope of habeas remedies available to Zalawadia seems flawed and wrong.

WIENER, Circuit Judge, concurring in part and dissenting in part:

I concur in the panel majority's conclusion that Mr. Zalawadia satisfies the "in custody" requirement for federal habeas corpus jurisdiction. With all due respect, however, I part company with the panel majority when it proceeds to auto-emasculate the habeas powers of federal courts by severely restricting the range of remedies that I find to be available in habeas. Specifically, I can find no statutory or jurisprudential support for the majority's conclusion that, even though we can and must vacate Mr. Zalawadia's removal order and remand his case to the district court, we are powerless to instruct the district court to remand to the BIA for it to consider affording him the opportunity to seek 212(c) discretionary relief. And, I find distressing the unavoidable conclusions that (1) the panel majority's reasoning is wholly irreconcilable with the Supreme Court's prior decision in this very case, and (2) the effect of the panel majority's cabining of the remedial powers of federal habeas courts is to render nugatory the Supreme Court's express directive in its remand of this case to us. For these reasons, as fleshed out below, I must respectfully dissent.

## I. Analysis

The panel majority's opinion is constructed on two proffered foundations: (1) Our authority to grant Mr. Zalawadia relief is limited to "undoing current or future legal restraints on [his]

freedom flowing from an illegal detention"[11]; and (2) because Mr. Zalawadia has already been deported, the only such <u>restraint</u> ("collateral consequence") that we are empowered to remedy is the statutory 5-year ban on re-entry — ironically, the one consequence that will be removed automatically when we vacate his removal order.[12] In combination, these two underpinnings are advanced by the panel majority as supporting its ultimate conclusion that, even though Mr. Zalawadia is entitled to habeas relief <u>vel</u> <u>non</u>, the only specific relief that we are empowered to grant is vacatur of the unlawful removal order under which he was, in fact, deported. Satisfied that the panel majority has incorrectly assessed the collateral consequences faced by Mr. Zalawadia as a result of his removal, which flawed assessment fatally undermines the majority's application of the first of its foundational supports, I must disagree strenuously with the opinion's overly restrictive conclusion regarding the nature and extent of the relief that we have authority to fashion.

---

[11] Opinion at p. 17.

[12] <u>See</u> opinion at p. 2 ("[W]e lack authority in this habeas action to grant relief beyond simply vacating the defective order ....The petitioner, whose liberty interests and rights are no longer encumbered by the deportation order, must turn to other procedural remedies, if any, for further relief.").

1.  <u>Remaining "collateral consequences" of Zalawadia's unlawful removal</u>

As the majority notes, a petitioner presents an Article III case or controversy when he demonstrates that he suffers from "collateral consequences" from a conviction despite an end to his incarceration.[13]   Although it is true that our vacating Mr. Zalawadia's removal order will remove one such consequence — the 5-year ban on re-entry that he would otherwise face — vacatur would do nothing to rectify the <u>standard</u> for readmission that he would need to meet on his return.  Specifically, at the time of his removal proceedings Mr. Zalawadia should have been allowed to apply for a waiver under former INA § 212(c), which allows an eligible returning alien to be admitted "in the discretion of the Attorney General."[14]   This opportunity was improperly denied him through <u>retroactive</u> application of IIRIRA.  By contrast, when Mr. Zalawadia applies for readmission following our vacatur of his removal order, he will still be required to obtain a waiver to re-enter the country; but he will not be permitted to try to do so under § 212(c) owing to IIRIRA.  Instead, Mr. Zalawadia must apply for a waiver under 8 U.S.C. § 1182(h), which will require him to demonstrate "to the satisfaction of the Attorney General that [his] denial of admission would result in <u>extreme hardship</u> to [his]

---

[13] Opinion at p. 10; <u>see also</u> <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998).

[14] <u>See</u> <u>INS v. St. Cyr</u>, 533 U.S. 289, 295 (2001).

23

United States citizen or lawfully resident...parent[s]."[15] Clearly, this is a different standard —— and, in practical terms, a much higher hurdle —— for establishing eligibility for readmission.

That the standard Mr. Zalawadia would face in a 212(c) hearing is discretionary is of no practical importance; the Supreme Court itself noted in <u>St. Cyr</u> that its own precedent has long provided that "a deportable alien [has] a right to challenge the Executive's failure to exercise the discretion authorized by the law."[16] And, despite the discretionary nature of 212(c) relief (and the mischaracterization by the panel majority), the <u>only</u> relief that Mr. Zalawadia is now seeking is the <u>opportunity</u> to plead his case to the BIA for an <u>opportunity</u> to seek 212(c) relief[17] —— an opportunity that was originally denied him through the illegal retroactive application of IIRIRA. In other words, as a direct result of the illegal removal proceedings to which he was subjected, Mr. Zalawadia is now foreclosed from seeking relief

---

[15] 8 U.S.C. § 1182(h)(1)(B) (emphasis added).

[16] <u>St. Cyr</u>, 533 U.S. at 308.

[17] Given that Mr. Zalawadia seeks not readmittance or even a 212(c) hearing, but only the opportunity to demonstrate to the BIA his eligibility for such a hearing, his request is consistent with the panel majority's description of what habeas relief is designed to do: "The habeas remedy removes the disability that may be a bar to the exercise of liberty interests; it does not order the deprived benefit be automatically granted by the government." Opinion at p. 17 n8.

under the more relaxed standard of § 212(c).[18] This result is, to me, indisputably a collateral legal consequence that flows from the illegal removal order and is one that is <u>not</u> removed by simply vacating that order.[19] Elimination of that untoward collateral consequence can only be achieved through equitable relief —— namely, giving Mr. Zalawadia the <u>opportunity</u> to have his eligibility for 212(c) relief argued at a hearing before the BIA.

The panel majority nevertheless asserts it is "baffled" by the idea that Mr. Zalawadia could hope to obtain relief other than vacating the removal order, insisting that any "additional" relief granted would be superfluous in light of the practical effects of the majority's decision.[20] As noted, this simply is not true, given the higher standard Mr. Zalawadia must meet to be eligible for admission under § 1182(h)(1)(B) instead of § 212(c). Furthermore, the majority's position underscores its confusion as to the circumstances under which Mr. Zalawadia left the country and the

---

[18] In <u>St. Cyr</u>, the Supreme Court noted that, historically, a "substantial percentage" of 212(c) applications have been granted; from 1989 to 1995, the percentage of successful applications was 51.5%, representing over 10,000 admitted aliens. <u>St. Cyr</u>, 533 U.S. at 296.

[19] In <u>Max-George v. Reno</u>, 205 F.3d 194, 196 (2000), <u>rev'd on other grounds</u>, 533 U.S. 945 (2001), we characterized a cognizable, "concrete" collateral consequence as one which "change[s] [petitioner's] status with respect to his admissibility whether he tries to return to the United States or not." The higher standard Mr. Zalawadia will face <u>if</u> he tries to return to the U.S. fits this description.

[20] Opinion at p. 20 n.10.

25

relief that he now seeks.  Specifically, Mr. Zalawadia was detained at the border after a brief trip abroad because of his 1995 theft convictions.  In pre-IIRIRA parlance, he was subjected to exclusion proceedings, not deportation.[21]  As the Supreme Court explained in St. Cyr —— discussing 212(c) relief in the context of deportation proceedings —— successfully requesting such relief terminates those proceedings and the alien "remains a permanent resident."[22]  Presumably, a successful application for 212(c) relief would function similarly in the context of exclusion (now removal) proceedings; that is, those proceedings would be terminated and the alien would be allowed to re-enter, remaining a permanent resident.[23]

In the course of litigating to reach that result, Mr. Zalawadia has contended, successfully, that the BIA improperly applied IIRIRA retroactively to foreclose the possibility of 212(c) relief.  What he seeks now, however, is a BIA determination of his eligibility for such relief, in accordance with INS v. Ventura. The "best result Zalawadia could obtain" from a BIA hearing, then,

---

[21] IIRIRA combined exclusion and deportation proceedings into a single, broader category, "removal proceedings," which encompasses both.

[22] St. Cyr, 533 U.S. at 295.

[23] That successfully requesting 212(c) relief would entail readmittance, and not just vacating any illegal removal orders against an individual, also appears to be true, given the text of the statute.  As discussed, former § 212(c) indicates that eligible returning aliens "may be admitted in the discretion of the Attorney General."  St. Cyr, 533 U.S. at 295 (emphasis added).

26

is not "vacating the erroneous deportation order against him,"[24] but rather a ruling that he meets the statutory requirements for 212(c) eligibility. Then, obviously, the Attorney General would need to make the discretionary decision on whether Mr. Zalawadia should be admitted. But the Attorney General is vested with the statutory authority to do just that, provided Mr. Zalawadia is found eligible by the BIA; indeed, under St. Cyr, the Attorney General is obligated to do so.[25] The panel majority's characterization of a remand with instructions as "additional" to vacating the removal order (as opposed to "different") only muddies the water. As discussed, a remand would simply be equitable relief designed to eliminate a collateral consequence of the district court's admittedly illegal retroactive application of IIRIRA.

2.   Would our granting any habeas relief beyond vacating the original order exceed our power as a habeas court?

I fail to see anything about the relief requested in this case that makes it different from other species of equitable relief that are generally authorized by 28 U.S.C. § 2243 and which have been previously fashioned by habeas courts. On the first point, § 2243 mandates that we "dispose of [habeas petitions] as law and justice require"; the Supreme Court has long interpreted that phrase to encompass a wide range of remedies[26] and recognized that the Great

---

[24] Opinion at p. 20 n.10.

[25] See note 6, supra, and accompanying text.

[26] See, e.g., notes 19-20, infra, and accompanying text.

27

Writ is governed by equitable principles.[27]  On the second point, although it is true that our precedent contains no exact analogues to the current case — indeed, it was produced by the unique convergence of wildly disparate factors — federal courts have fashioned relief similar to (and, sometimes, more onerous than) the remand with instructions that Mr. Zalawadia seeks.

For example, in <u>Osborn v. Shillinger</u>, the Tenth Circuit upheld a district court order (entered in a habeas proceeding) allowing a defendant to withdraw his guilty plea, enter a new one, and be tried and sentenced — <u>before a different state court judge</u> in a <u>different venue</u>.[28]  In considering the State's contention that the conditions imposed by the district court exceeded its authority, the Tenth Circuit quoted the "law and justice" language of § 2243 and concluded that it "[did] not believe the lower court abused its broad discretion in requiring that new state proceedings be held

---

[27] <u>See</u>, <u>e.g.</u>, <u>Schlup v. Delo</u>, 513 U.S. 298, 319 (1995)("[T]he Court has adhered to the principle that habeas corpus is, at its core, an equitable remedy.")(Partially abrogated, on other grounds, by the Antiterrorism and Effective Death Penalty Act of 1996); <u>Withrow v. Williams</u>, 507 U.S. 680, 699 (1993)("Concerns for equity...resonate throughout our habeas jurisprudence."); <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 447 (1986)("In decisions of the past two or three decades,...the Court has reaffirmed that 'habeas corpus has traditionally been regarded as governed by equitable principles.'" <u>quoting</u> <u>Fay v. Noia</u>, 372 U.S. 391, 438 (1963), <u>citing</u> <u>United States ex rel. Smith v. Baldi</u>, 344 U.S. 561, 573 (1953)(dissenting opinion)).

[28] 861 F.2d 612, 630 (10th Cir. 1988).

under [those] circumstances...."[29]  Similarly, in <u>Dowd v. United States ex rel. Cook</u>, the Supreme Court quoted § 2243 and ordered that "[o]n remand, the District Court should enter <u>such orders as are appropriate</u> to allow the State a reasonable time in which to afford respondent the <u>full appellate review he would have received</u> but for the suppression of his papers...."[30]

It is certainly true that typically — and in both the cases noted above — the remand order is tied to the possibility of the prisoner's release, and could be labeled a conditional grant of the writ.[31]  It is also true that our arsenal of equitable remedies does not contain the "big stick" of the threat of granting outright release (or, in this situation, its analogue, forced readmission) available to compel the district court or the BIA to comply with our remand instructions, as is typically the case.  But this is more a function of the confluence of factors that led to the

---

[29] <u>Id.</u>  The Tenth Circuit also held in <u>Capps v. Sullivan</u>, 13 F.3d 350, 352 (1993) that "barring a new trial is a permissible form of judgment" in a habeas case, when "necessary to protect the purpose of habeas corpus jurisdiction when the error forming the basis for the relief cannot be corrected in further proceedings." The court explained that "the district court had the power to grant <u>any form of relief necessary</u>...."  <u>Id.</u> (emphasis added).

[30] 340 U.S. 206, 210 (1951)(emphasis added).

[31] In fact, in <u>Osborn</u>, the Tenth Circuit characterized the relief in just this way, stating that it "view[ed] the district court's 'remand' order as, in effect, the issuance of a conditional writ."  <u>Osborn</u>, 861 F.2d at 630.

strange procedural posture of this case,[32] and is not determinative of our <u>authority</u> to provide appropriate equitable relief.  My point is that, in the aforementioned cases as well as in many others, the habeas courts remanded with specific instructions equitably crafted to remedy the collateral effects of the defective procedures at issue.[33]  This we <u>can</u> do:  Even though we do not enjoy the leverage of the threat of forced readmission to enforce an order to remand to the BIA for a hearing, the district court would still be bound to accept our decision.[34]

In my view, though, the most convincing evidence that we do have the power to remand with such instructions — the "proof" of

---

[32]  Specifically, this case arises out of the landmark immigration reform that occurred in 1996, coupled with the district court's illegal retroactive application of that law, the government's decision to deport while Mr. Zalawadia's habeas appeal was still pending, and the district court's subsequent ignorance of <u>INS v. Ventura</u>.  These factors have combined to create a fact pattern that is not easily found in our existing jurisprudence, and unlikely to reoccur in the future.

[33]  <u>See</u>, <u>e.g.</u>, <u>Parker v. Dugger</u>, 498 U.S. 308, 322-23 (1991) ("We reverse...and remand with instructions to return the case to the District Court to enter an order directing the State of Florida to initiate appropriate proceedings in state court so that Parker's death sentence may be reconsidered in light of the entire record of his trial and sentencing hearing and the trial judge's findings."); <u>Richmond v. Lewis</u>, 506 U.S. 40, 52 (1992) ("We reverse...and remand with instructions to return the case to the District Court to enter an order granting the petition for a writ of habeas corpus unless the State of Arizona within a reasonable period of time either corrects the constitutional error...or vacates the sentence and imposes a lesser sentence consistent with law.").

[34]  Just as we, of course, are bound to follow the Supreme Court's directions on remand — something that, as I discuss <u>infra</u>, the panel majority opinion fails to do.

this particular "pudding" —— lies in the Supreme Court's original decision and order <u>in this very case</u>. Remember, it was back in October 1999 that Mr. Zalawadia first filed his habeas petition, listing four causes of action, including erroneous denial of a § 212(c) <u>hearing</u> (<u>not</u> relief). After the district court dismissed that petition for lack of jurisdiction —— and we dismissed Mr. Zalawadia's appeal for the same reason —— the Supreme Court granted his petition for certiorari and considered his case. At that time, his case was in exactly the same posture as it is today, i.e., the Supreme Court was not considering a "direct appeal of [a] BIA[] decision,"[35] but rather was acting pursuant to its habeas authority. According to the panel majority, this means that the Court was obligated to "confine the scope of its review to considering the legality of the custody at issue."[36] To the panel majority, the Supreme Court then enjoyed no more authority —— but no less —— than we do now when it comes to granting appropriate relief under the writ.

Thus, under the panel majority's logic, the Supreme Court had <u>only one</u> form of relief open to it after it considered Mr. Zalawadia's habeas appeal, viz., to vacate the illegal removal order. According to the panel majority, any other relief would be "beyond the bounds of reviewing Zalawadia's 'detention

---

[35] Opinion at p. 13.

[36] Opinion at p. 15.

31

simpliciter.'"[37]  This is so, insists the panel majority, because "[t]he only question presented in [a] habeas case concerns the legality of the order upon which [the] detention was based.  By acknowledging the illegality of [the] order...and by vacating the order...the federal habeas court has answered and addressed this question."[38]  In fact, because the issue decided by the Supreme Court was but one of four causes of action that formed the basis of Mr. Zalawadia's habeas petition, it is all the more obvious under the majority's reasoning that the only remedy open to the Court would be to vacate the removal order.  After all, the Supreme Court had "already made clear that the deportation order under which Zalawadia had been detained was legally flawed."[39]  Thus, according to the panel majority's "logic", there was neither the need <u>nor the authority</u> to remand with instructions.  Yet that is precisely what the Supreme Court did!

I emphasize that the situation as it existed then is indistinguishable from what we face now: (1) The Supreme Court was sitting as a habeas court; (2) it had already determined that the prior proceedings were tainted —— at that stage, by retroactive application of IIRIRA; and (3) it remanded to us with instructions to correct the defect, i.e., for "further consideration in light of

---

[37] Opinion at p. 18.

[38] Opinion at p. 19.

[39] Opinion at p. 12.

INS v. St. Cyr."[40]  In exact parallel: (1) We are sitting as a habeas court; (2) we have already determined — through nothing less than the government's own concession[41] — that the prior proceedings were tainted, this time through the district court's failure to adhere to INS v. Ventura;[42] and (3) Mr. Zalawadia asks only that we remand to the district court with instructions that it remand to the BIA for a hearing on his 212(c) eligibility,[43] which

---

[40]  Zalawadia v. Ashcroft, 121 S.Ct. 2581 (2001)(citation omitted).

[41] In its appellate brief, the government concedes: "Should the Court find that Zalawadia may continue to litigate his section 212(c) claim, the Government agrees that the case should be remanded to the Board to decide Zalawadia's section 212(c) eligibility in the first instance."

[42] 537 U.S. 12 (2002).

[43] The panel majority asserts that Mr. Zalawadia requested that we readmit him for the purposes of a § 212(c) hearing (see Opinion at p. 18), but the fact is that he did not . Mr. Zalawadia's request for relief in both his original and reply briefs is simple: He "requests that this Court reverse the District Court's decision and remand his case to the Board of Immigration Appeals for further consideration in light of the Supreme Court's decision in INS v. St. Cyr, or in the alternative, find that [he] is eligible for 212(c) relief and order that this matter be remanded to the [BIA] with instructions to hold a hearing on 212(c) relief."  Mr. Zalawadia raised the possibility of readmittance for the purpose of attending a 212(c) hearing only in his reply brief in response to the government's arguments that (1) BIA regulations precluded Mr. Zalawadia from continuing his case and (2) the government was "aware of no authority holding that removed aliens, such as Zalawadia, have a 'right' to continue to litigate claims for discretionary relief under former section 212(c) from abroad." Similarly, at oral argument this subject was addressed after questioning by the panel on the point.  Setting aside for the moment that it is far from certain that Mr. Zalawadia would be required to attend such a hearing, as he is ably represented by counsel, the fact is that his appeal focuses exclusively on the district court's improper consideration (and ultimate denial) of

33

would cure the defect and would essentially be (as a comparison point to the relief earlier granted by the Supreme Court) "further consideration in light of Ventura." When the panel majority states that we are without power to do this because of the nature of the writ, it is telling the Supreme Court —— unwittingly, I am sure —— that it was without such power when it first considered Mr. Zalawadia's habeas petition. Even unintentionally, this is audacious.

The Supreme Court cannot conceivably agree with the panel majority's assessment, however, because in remanding to us with instructions the Court did precisely what the panel majority insists no federal court can do.[44] This further buttresses my unequivocal belief that (1) merely vacating Mr. Zalawadia's removal order does not remove all of the collateral legal consequences of his illegal detention, and (2) federal courts sitting as habeas courts do have the power to fashion appropriate equitable relief —— such as, in this case, remanding with instructions to remand to the BIA —— to eliminate such collateral consequences. Indeed, federal courts have done so for decades.[45]

---

his eligibility for 212(c) relief: The question of his readmission has never been before us.

[44] I note, also, that the Court's remand in this case could not be termed a conditional grant of the writ; i.e., the Court did not say "conduct proceedings consistent with St. Cyr or release or readmit the petitioner"; it simply remanded with instructions, just as Mr. Zalawadia requests that we do now.

[45] See, e.g., notes 19-20, supra, and accompanying text.

Several of the cases relied on by the panel majority are so factually distinguishable from the instant case that they provide no real support for the majority opinion's assessment of the limits of our authority.  In Lehman v. Lycoming County Children's Services Agency, for example, the petitioner sought the following forms of relief: (1) invalidation of a state statute that had terminated her parental rights, (2) a declaration that she was the legal parent of the children at issue, and (3) an order releasing the children to her custody.[46]  Notably, this request was unrelated to imposed custody of any sort:  Petitioner had never been "in custody," and the Court noted that her children were "not in the 'custody' of the State in the sense in which that term has been used by this Court in determining the availability of the writ of habeas corpus."[47] In that context, it is hardly surprising that the Court stated that habeas is not "a generally available federal remedy for every violation of federal rights."[48]  It was the custody issue, however,

---

[46] 458 U.S. 502, 506 (1982).

[47] Id. at 510.

[48] Id.

that was determinative,[49] and that issue is not (as the panel majority concedes) a factor in the instant case.

Similarly, in <u>Amanullah v. Nelson</u>, cited by the panel majority on pages 15 and 17, the First Circuit noted that habeas corpus "cannot be utilized to review a refusal to grant collateral administrative relief, <u>unrelated to the legality of custody</u>,"[50] and, in that case, "the appellants [had] <u>not shown</u> that their <u>detention</u> violates the law."[51] Those two facts led ineluctably to the conclusion that the appellants in <u>Amanullah</u> were not entitled to the relief they sought — a mandate to conduct evidentiary hearings. The instant case is diametrically opposite on both counts: The collateral consequence under discussion here arises <u>directly</u> from Mr. Zalawadia's detention, the illegality of which has <u>already been established by the Supreme Court</u>. It was precisely the illegality identified by the Court — the district court's improperly foreclosing any possibility of 212(c) relief — that caused the injury for which Mr. Zalawadia now seeks redress.

---

[49] The district court had originally held that "the custody maintained by the Respondent over the three Lehman children is not that type of custody to which the federal habeas corpus remedy may be addressed." See <u>Lehman</u>, 458 U.S. at 506 (quoting <u>Lehman v. Lycoming County Children's Services Agency</u>, Civ. No. 79-65, (MD Pa. 1979)). The Third Circuit affirmed the district court dismissal, and the Supreme Court affirmed the Third Circuit.

[50] <u>Amanullah v. Nelson</u>, 811 F.2d 1, 17 (1st Cir. 1987) (emphasis added) (quoting 2 C. Gordon & H. Rosenfield, <u>Immigration Law and Procedure</u>. § 8.7(h) (Revised ed. and Cum. Supp. 1986).

[51] <u>Amanullah</u>, 811 F.2d at 17 (emphasis added).

This leads to my final point: The panel majority's opinion renders illusory all prior decisions in this case — including the Supreme Court's! The Court remanded for proceedings consistent with St. Cyr, but the district court's purported conduct of such proceedings on remand itself violated the mandate of INS v. Ventura.[52] Identically, our refusal to remand with instructions for further remand to the BIA now (because of our purported inability to employ the very same form of relief that the Supreme Court has already employed in this very case) means that the appropriate adjudicative body — the BIA — will never have determined Mr. Zalawadia's eligibility to apply for relief — thereby violating Ventura yet again. In turn, this means that Mr. Zalawadia will never have had a full and fair hearing on that question — a direct

---

[52] Herein lies the flaw in the panel majority's contention that vacating the removal order alone comports with the Supreme Court's remand in this case. See opinion at p. 20, n.10. Although "cursory and non-specific," I think it obvious that the Court's directive that (in the panel majority's words) "lower courts ... reconsider Zalawadia's case in the light of the recently-decided St. Cyr" dictates, at a minimum, that any district court reconsideration be consistent with the Constitution, existing law, and Supreme Court precedent. In this case, as noted and as the government has conceded, the district court improperly decided the question of Mr. Zalawadia's 212(c) eligibility. The district court was not empowered to make that decision. Therefore, when it did so, it deprived Mr. Zalawadia of a reconsideration consistent with St. Cyr. Under the panel majority's reasoning, any reconsideration by the district court would meet the dictates of the Supreme Court remand, regardless of whether that reconsideration offended the Constitution or was otherwise illegal. With all due respect, I must wonder whether the panel majority would still consider the district court's reconsideration in line with the Supreme Court remand if the district court had disposed of Mr. Zalawadia's case by, say, flipping a coin.

violation of the Supreme Court's remand in his case for proceedings consistent with <u>St. Cyr</u>.[53]

## II. Conclusion

In my opinion, this case boils down to several interrelated fallacies. First, we do not remove all of the collateral consequences of Mr. Zalawadia's defective removal order simply by vacating that order; he would still be subject to what is, in reality, a standard to gain eligibility for reentry that we raise to an impossibly high level, i.e., a hurdle markedly higher than that applicable in a 212(c) hearing. Second, under principles of equity, habeas courts have often remanded with instructions to remedy constitutionally defective proceedings, yet the majority prevents us from doing that. Third, the Supreme Court's remand <u>in this very case</u> — embodying as it does the exact form of relief Mr. Zalawadia now requests and the panel majority denies — confirms that we absolutely <u>do</u> have the power to order the kind of equitable relief for which he asks. Fourth, remanding on the unduly limited basis set forth by the panel majority eviscerates the Supreme Court's decision in this case and fails to follow the overarching

---

[53] Undermining the Supreme Court's remand in this way not only violates an intuitive understanding of how we should honor Supreme Court decisions, but specific Supreme Court precedent as well: "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review...." <u>Harper v. Va. Dep't of Taxation</u>, 509 U.S. 86, 97 (1993).

maxim that we dispose of habeas petitions "as law and justice require."

On this last point, I would note that by doing nothing more than vacating Mr. Zalawadia's removal order, we give him no real relief at all, as we neither remedy the constitutional violation that the Supreme Court has <u>already determined</u> took place nor give Mr. Zalawadia the opportunity to erase the collateral legal consequences of that constitutional violation. In short, Mr. Zalawadia "is suffering, and will continue to suffer, serious disabilities because of the law's complexities and not because of his fault....There is no need in the statute, the Constitution, or sound jurisprudence for denying to petitioner his ultimate day in court."[54] This is why I am constrained, with respect, to dissent.

---

[54] <u>Carafas v. LaVallee</u>, 391 U.S. 234, 239 (1968).