# United States Court of Appeals
## For the First Circuit

No. 00-2092

ERNEST M. LEITAO,

Petitioner, Appellant

v.

JANET RENO,[*] Attorney General,
DORIS MEISSNER, Commissioner of the
Immigration and Naturalization Service;
STEVEN FARQUAHARSON, District Director of the INS;
DEPARTMENT OF JUSTICE;
IMMIGRATION AND NATURALIZATION SERVICE, US

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U. S. District Judge]

Before

Torruella, Circuit Judge,

John R. Gibson,[**] Senior Circuit Judge,

and Howard, Circuit Judge.

---

[*]John Ashcroft has succeeded Janet Reno as Attorney General of the United States.  Pursuant to Fed. R. Civ. P. 25(d)(1) and Fed. R. App. P. 43(c)(2), John Ashcroft is substituted by operation of law as a defendant in this case.

[**]Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

        Robert D. Watt, Jr., on brief, for petitioner.
        Lyle D. Jentzer, Attorney, U. S. Department of Justice, with
whom Stuart E. Schiffer, Acting Assistant Attorney General, and
Terri J. Scadron, Senior Litigation Counsel, were on brief, for
respondent.

------------------------

November 26, 2002

------------------------

**JOHN R. GIBSON, <u>Senior Circuit Judge</u>**.  Ernest M. Leitao appeals from the district court's dismissal of his habeas corpus petition, in which he sought a hearing on his request for relief from deportation.  The law applicable to Leitao's case has been clarified by the Supreme Court's recent decision in <u>INS</u> v. <u>St. Cyr</u>, 533 U.S. 289 (2001), which makes it clear that Leitao is entitled to the hearing he seeks.  We therefore reverse and remand.

Leitao was born in Portugal and is a citizen of that country, but he lived in the United States as a lawful permanent resident from April 17, 1971, when he was two years old, until October 16, 2000, when he was deported in the proceedings at issue in this case.  On May 9, 1989 Leitao pleaded <u>nolo contendere</u> to a charge of possession of marijuana with intent to deliver it.  He received a one-year suspended sentence and two years' probation.

The legal effect of that plea and conviction is the question at the heart of this case.  At the time Leitao pleaded guilty, his controlled substance conviction provided a basis for deporting him under 8 U.S.C. § 1182(a)(2)(A)(i) (1994), but the Attorney General had discretion to grant a waiver of deportation under section 212(c) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1182(c) (1994).[1]  After Leitao pleaded guilty to the marijuana

---

[1]Section 212(c) is on its face applicable to persons seeking admission to this country, not to resident aliens, but the provision was interpreted by the BIA to apply to permanent resident aliens with a lawful unrelinquished domicile of seven consecutive years.  <u>INS</u> v. <u>St. Cyr</u>, 533 U.S. 289, 295 (2001).  Leitao is such

offense, Congress amended the INA as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, commonly known as the AEDPA.  Section 440 of the AEDPA, effective April 24, 1996, took away the Attorney General's discretion to admit persons convicted of controlled substance violations.[2]  110 Stat. at 1276-77.

On July 9, 1996, shortly after the AEDPA was enacted, the INS served Leitao with an order to show cause why he should not be deported.  Leitao conceded deportability, but requested leave to file for discretionary relief under section 212(c) of the INA.  The Immigration Judge denied that request, as did the Board of Immigration Appeals, on the theory that section 440(d)of the AEDPA rendered Leitao ineligible for discretionary relief.  The Immigration Service took Leitao into custody on June 1, 1999.

Leitao then filed the instant habeas corpus petition, alleging that section 440(d) of the AEDPA should not have been applied to his case and that he should be granted a hearing on his request for discretionary relief.  The district court dismissed his habeas

---

a person.

[2]Later, yet another new statute, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, repealed section 212(c) altogether, and replaced it with a new form of discretionary relief called "cancellation of removal," which restricts eligibility for relief to a smaller group of candidates than did section 212(c).  Pub. L. No. 104-208, Div. C., 110 Stat. 3009-546, 3009-597, codified at 8 U.S.C. § 1229b (2000); see generally Mattis v. Reno, 212 F.3d 31, 33 (1st Cir. 2000).

petition, relying on the rule in Mattis v. Reno, 212 F.3d 31 (1st Cir. 2000).  In Mattis we held that aliens who were convicted of a now-disqualifying crime while the old version of section 212(c) was in effect and whose deportation proceedings did not begin until after the passage of AEDPA would be eligible for section 212(c) relief if and only if the alien actually relied on the availability of section 212(c) relief in deciding to plead guilty or nolo contendere.  Id. at 33.  Under this rule, Leitao was not eligible for relief because he did not contend that he had relied on the availability of section 212(c) relief in deciding not to contest the charge.

After the district court dismissed the habeas petition, Leitao was deported to Portugal.

Leitao appealed the district court's decision.  While this appeal was pending, the Supreme Court decided St. Cyr.  In St. Cyr, the Supreme Court held that the repeal of section 212(c) by the Illegal Immigration Reform and Immigrant Responsibility Act, commonly known as IIRIRA, should not be applied retroactively to the cases of aliens who pleaded guilty to crimes before the repeal.  Id. at 326.  The Court reached this result as a matter of statutory construction, following from two conclusions: first, Congress did not direct with the requisite clarity that the repeal was to apply retroactively, id. at 316-17; and second, applying the repeal to eliminate discretionary relief for people who pleaded guilty to

crimes at a time when such relief was available would create an "obvious and severe retroactive effect," id. at 325. The Court held:

> We find nothing in IIRIRA unmistakably indicating that Congress considered the question whether to apply its repeal of § 212(c) retroactively to such aliens. We therefore hold that § 212(c) relief remains available for aliens, like respondent, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect.

Id. at 325. St. Cyr thus superceded the Mattis rule with a more liberal one that included Leitao in the class of persons eligible for section 212(c) relief, as the government concedes.[3]

Nevertheless, the government contends that Leitao's case differs from St. Cyr's in one crucial respect: Leitao has already been deported. The government contends that the deportation dooms Leitao's habeas petition for two reasons: first, the petition is moot, and second, the Attorney General has announced that he will not exercise his discretion to grant relief to a person who has already been deported.

Leitao's case is not moot even though he is no longer in custody. Leitao was in custody when he filed his habeas petition, which is enough to satisfy the jurisdictional custody requirement

---

[3]St. Cyr only considered the retroactivity question in relation to the IIRIRA, not the AEDPA. However, the INS has stated that "the reasoning of St. Cyr apples equally to section 440(d) of AEDPA." 67 Fed. Reg. 52,627, 52,628 (proposed Aug. 13, 2002). We have treated St. Cyr as applicable to section 440(d) of the AEDPA. Attwood v. Ashcroft, 260 F.3d 1, 3 (1st Cir. 2001).

of 28 U.S.C. § 2241 (2000). See Spencer v. Kemna, 523 U.S. 1, 7 (1998). A habeas petition will become moot once the prisoner is released from custody unless the petitioner can show some sufficient collateral consequence of the underlying proceeding. Id. Other circuits have held that the ten-year bar on readmission of a removed alien into the United States under 8 U.S.C. § 1182(a)(9)(A)(ii) (2000) is a sufficient collateral consequence to preserve a live controversy even after deportation of the prisoner. Chong v. District Director, INS, 264 F.3d 378, 385-86 (3d Cir. 2001); Max-George v. Reno, 205 F.3d 194, 196 (5th Cir. 2000), vacated on other grounds, 533 U.S. 945 (2001); accord Smith v. Ashcroft, 295 F.3d 425, 428 (4th Cir. 2002) (same result without specific mention of § 1182(a)(9)(A)(ii)). The government contended at oral argument that Leitao's offense would qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(2000). If so, Leitao would be permanently barred from readmission to the United States under 8 U.S.C. § 1182(a)(9)(A), unless he were to receive consent by the Attorney General to his readmission before he embarked for the United States, pursuant to section 1182(a)(9)(A)(iii). Leitao would have no right to such consent. A permanent bar on readmission, of course, is an even more damaging consequence of his removal than a ten-year bar, and other courts have considered it sufficient to avoid mootness despite deportation. Tapia Garcia v. INS, 237 F.3d 1216, 1218 (10th Cir 2001) (on review of removal order, permanent bar to readmission

for aggravated felon is collateral consequence); Steele v. Blackman, INS, 236 F.3d 130, 134 n.4 (3d Cir. 2001) (same on habeas review). A grant of section 212(c) relief would erase the collateral consequences. See Tapia Garcia, 237 F.3d at 1218; Steele, 236 F.3d at 134 n.4. We too hold that the bar on readmission of a removed alien is a legally cognizable collateral consequence that preserves a live controversy even after deportation of the petitioner.

Our continuing jurisdiction being clear, we conclude that we must remand to the district court to order the INS to afford Leitao a hearing on his request for discretionary waiver under section 212(c). See Attwood v. Ashcroft, 260 F.3d 1, 3 (1st Cir. 2001). The government has informed us that the INS has proposed a rule which would deny section 212(c) relief to persons who have already been deported. 67 Fed. Reg. 52,627, 52,632 (proposed Aug. 13, 2002). This rule has not been finally adopted, and so it would be doubly premature for us to try to anticipate whether it will be adopted as proposed, and if so, how the INS would apply it in Leitao's case.

We reverse and remand with instructions that the district court grant Leitao's petition to the extent that it seeks a hearing on his application for section 212(c) relief.