**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0076n.06**
**Filed: February 1, 2005**

**No. 02-2495**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Abed Mosa Baidas, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | U N I T E D   S T A T E S |
| Carol Jenifer; Immigration and | ) | DISTRICT COURT FOR |
| Naturalization Service, | ) | THE EASTERN DISTRICT |
| | ) | OF MICHIGAN |
| Respondents-Appellees. | ) | |

Before: Ryan, Cole, and Rogers, Circuit Judges.

**Rogers, Circuit Judge.** Petitioner Abed Mosa Baidas appeals the district court's dismissal of his petition for writ of habeas corpus, which challenged the validity of an order directing his removal on the basis of convictions for crimes of moral turpitude and a conviction for an aggravated felony. Because the record is insufficient to consider two colorable arguments made by petitioner, we reverse the judgment of the district court and remand for further proceedings.

**I.**

Baidas, a citizen of Jordan, was lawfully admitted to the United States in 1979 and became a permanent resident in 1982. Analysis of his removability requires an examination of his criminal history. Baidas was convicted on September 30, 1991 of two counts of non-sufficient check, and

was sentenced to probation. The counts arose from acts committed against a bank on separate dates, one in 1986 and one in 1987. On October 5, 1995, Baidas was convicted of attempted failure to return rental property valued over $100, arising out of a 1994 incident, and he was again sentenced to probation. Also on October 5, 1995, Baidas was convicted of two counts of attempted third degree criminal sexual misconduct, arising out of acts occurring in 1992, and he was sentenced to two years of probation. On March 21, 1996, Baidas pled guilty to violation of his probation on the failure to return rental property conviction, and he was sentenced to 365 days in jail, which, according to documents provided by Baidas, was later reduced to 336 days in jail. At the same time that Baidas pled guilty to violating his probation on the failure to return rental property conviction, he also pled guilty to violating his probation on the criminal sexual conduct conviction, and on this conviction he was also sentenced to 336 days in jail. On October 1, 1998, Baidas was convicted of passing a no account check, of obtaining money or property by false pretenses, and of non-sufficient check over $200, for which he received sentences of imprisonment. However, because the Board of Immigration Appeals (BIA) did not rely upon the 1998 convictions in its decision upholding removal, *see In re Baidas*, No. A22 724 139, slip op. at 4 (BIA May 11, 2001), the 1998 convictions are not at issue.

On February 10, 1998, the Immigration and Naturalization Service (INS) issued a Notice to Appear pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii), under which Baidas was alleged to be removable

for having been convicted of two or more crimes involving moral turpitude,[1] and presumably also

pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), under which Baidas was alleged to be removable for

having been convicted of an aggravated felony.[2]  On January 20, 2000, Baidas was found subject

to removal by an immigration judge by reason of having been convicted of two or more crimes

involving moral turpitude.  The immigration judge, however, found that Baidas was not subject to

removal as an aggravated felon.  Baidas petitioned for relief from removal; this petition was denied

by the immigration judge on September 13, 2000, in an order again holding Baidas removable under

§ 1227 (a)(2)(A)(ii).  Baidas appealed his removal to the BIA, and the INS appealed the dismissal

of the aggravated felon charge of removability.  The BIA affirmed the immigration judge's finding

that Baidas was removable for conviction of two or more crimes involving moral turpitude, and

overturned the immigration judge's finding that Baidas was not subject to removal as an aggravated

felon, and accordingly issued a final order of removal under both §§1227(a)(2)(A)(ii) & (iii).

---

[1]8 U.S.C. § 1227(a)(2)(A)(ii) provides that:

Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens: . . .

Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.

[2]8 U.S.C. § 1227(a)(2)(A)(iii) provides that:

Any alien who is convicted of an aggravated felony at any time after admission is deportable.

Baidas appealed the decision to the Sixth Circuit, but a panel of this court dismissed the appeal for lack of jurisdiction because 8 U.S.C. § 1252(a)(2)(C) precludes judicial review of a final order of removal against a criminal alien. *See Baidas v. Ashcroft*, No. 01-3586 (6th Cir. Aug. 14, 2001). The panel addressed Baidas's contention that he was not a criminal alien because he had not been convicted of an aggravated felony or two or more crimes of moral turpitude, and held that his convictions met the statutory definitions of aggravated felony and crimes of moral turpitude. This was done pursuant to the court's jurisdiction to decide jurisdiction. The dismissal was without prejudice to Baidas's right to seek relief pursuant to 28 U.S.C. § 2241. Baidas subsequently filed a petition pursuant to 28 U.S.C. § 2254 challenging his plea to his 1998 conviction, which petition was dismissed. Finally, on September 20, 2001, Baidas filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking review of the final order of removal.

Baidas's § 2241 petition was referred to a magistrate judge, who issued a Report and Recommendation, recommending that the petition be denied. The district court granted several requests by Baidas to extend the time for filing objections to the report, with the result that objections were due on November 15, 2002. Baidas had been released from INS custody in November of 2001, but apparently violated a condition of his release, and during the time for filing objections to the Magistrate Judge's report was returned to INS custody and was scheduled to be removed to Jordan. On October 8, 2002, Baidas filed an emergency motion to stay removal, indicating that his removal was imminent. On October 29, 2002, the district court issued an order dismissing Baidas's petition for writ of habeas corpus, stating that because Baidas's removal was

imminent, "rather than wait for Petitioner's objections, the Court has reviewed the MJRR and finds no error in the magistrate judge's analysis and conclusion. Accordingly, the MJRR of September 4, 2002 is adopted as the findings and conclusions of the Court." The district court also denied as moot an emergency motion for a stay of removal.

Baidas was removed to Jordan on October 29, 2002. He then filed a motion for reconsideration and objections to the Magistrate Judge's Report and Recommendation (M.J.R.R.). The district court issued an order denying both motions and directing that Baidas not file further papers in the district court. Baidas filed a notice of appeal, but the district court denied issuance of a certificate of appealability. On January 8, 2003, Baidas filed a motion in this court to vacate the district court order denying a certificate of appealability. On March 7, 2003, a panel of this court entered an order stating that a certificate of appealability was not required.

On appeal, Baidas renews his challenges to the final order of removal, arguing that his constitutional rights were violated by the removal and otherwise challenging the validity of the removal. He also argues that the district court violated his due process rights by dismissing his petition for writ of habeas corpus before the time to file objections to the M.J.R.R. expired, and by allegedly denying him the right to obtain evidence. Third, Baidas argues that the district court erred in adopting the M.J.R.R. without conducting a de novo review of the record. The record is not adequate to consider two of Baidas's arguments, and we therefore remand the case for further consideration. The remainder of Badias's arguments are without merit.

**II.**

There is jurisdiction in this case under 28 U.S.C. § 2241, the general habeas corpus provision. Under *INS v. St. Cyr*, 533 U.S. 289 (2001), the writ is preserved in the case of aliens challenging deportations who raise otherwise unreviewable "pure questions of law," and was not repealed by either the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) or the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). 533 U.S. at 304-05, 308, 314. A petition for a writ of habeas corpus under 28 U.S.C. § 2241 is limited to claims that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This court has held that "judicial review of final orders of removal is available where the review is limited to pure questions of law and does not touch upon decisions that are under the discretion of the Attorney General." *Moussa v. Jenifer*, 389 F.3d 550, 554 (6th Cir. 2004). This court was not deprived of jurisdiction due to Baidas's removal to Jordan during the pendency of his petition; although 28 U.S.C. § 2241(c)(1) limits the availability of the writ to those "in custody," custody is considered only at the time the petition is filed. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 395 n.6 (6th Cir. 2003) (en banc); *see also United States v. Garcia-Echaverria*, 374 F.3d 440, 447 (6th Cir. 2004); *Chong v. District Director*, 264 F.3d 378, 382-83 (3d Cir. 2001). Nor is Baidas's petition moot. A petition will not be moot if the petitioner "can show some sufficient collateral consequence of the underlying proceeding." *Leitao v. Reno*, 311 F.3d 453, 455 (1st Cir. 2002). A statutory term that prevents removed aliens from re-entering the U.S. for ten years, 8 U.S.C. § 1182(a)(9)(A)(ii), creates sufficient collateral consequences. *Leitao*, 311 F.3d at 456.

Because deportation proceedings against Baidas did not begin until 1998, this case is otherwise governed by AEDPA and IIRIRA. *See Rosales-Garcia*, 322 F.3d at 394, 401. A district court's denial of a petition for habeas corpus brought pursuant to § 2241 is reviewed de novo. *Id.* at 400-01.

## III.A.

Before turning to Baidas's substantive arguments, we must address his objections regarding how the district court proceeded with his petition. First, we do not consider the district court's procedural treatment of Baidas's objections to the M.J.R.R. to be a ground for reversal. Although the district court should not have entered an order adopting the M.J.R.R. and dismissing Baidas's petition without waiting for Baidas's objections, the district court's later consideration of those objections cured any harm to Baidas. Nor are we persuaded by Baidas's argument that the district court failed to conduct a de novo review of the M.J.R.R. before adopting it, or that the district court failed to conduct a de novo review of Baidas's objections. In a well-reasoned but unpublished opinion, this court held that even though a district court had adopted the magistrate judge's report and recommendation only one day after the plaintiffs filed their objections, and did not specifically state that the review was de novo, the review was presumed to be de novo without "persuasive indication otherwise." *Sutton v. United States Small Business Administration*, No. 02-1765, 2003 WL 22976561, * 5 (6th Cir. Dec. 4, 2003). Baidas has not presented any persuasive indication that the district court did not conduct a de novo review of the M.J.R.R., and therefore, we presume that the district court complied with its duty.

Similarly, this court presumes that the district court conducted a de novo review of Baidas's objections. In an order dated November 25, 2002, the district court made the following statement regarding Baidas's objections: "As to his objections, which run 32 pages with 10 attached exhibits, Petitioner continues to make essentially the same arguments considered and rejected by the magistrate judge. For all the reasons stated in the MJRR of September 4, 2002, Petitioner's objections lack merit and are DENIED." Although this court "strongly recommend[s] that district courts put on the record at least brief statements in support of their decisions to overrule objections to a magistrate judge's report and recommendation," this is not a per se requirement. *Senter v. Sullivan*, No. 91-6222, 1992 WL 238268, *2 (6th Cir. Sept. 25, 1992). Without persuasive indication otherwise, the district court's statement that it had reviewed the objections sufficiently establishes that the review conducted was de novo.

**B.**

We turn now to the substance of Baidas's arguments against removal. Although Baidas's pro se Appellant Brief lacks clarity regarding the issues raised, he makes five basic arguments which we resolve as follows: First, we remand for further consideration Baidas's claim that the order of removal is invalid because his application for naturalization was actually approved, and the only reason he did not become a citizen was because the INS failed to schedule him to take the oath of allegiance. Baidas's second argument, that none of his convictions resulted in a length of imprisonment that would make him removable, and that his convictions, apart from the sentence imposed, were not of the type that would make him removable, fails because the relevant issues have

already been resolved against him when he was previously before this court. Third, Baidas's Equal Protection Clause arguments (that with respect to aliens committing crimes of moral turpitude, aliens admitted legally are treated differently than aliens who enter illegally) were properly rejected for the reasons given by the district court. Fourth, Baidas's argument based on *INS v. St. Cyr*, 533 U.S. 289 (2001), that he must be permitted to seek a discretionary waiver of deportation, warrants a remand to determine wither his convictions were based on guilty pleas. Finally, Baidas's remaining arguments are without merit.

**1.**

First and foremost, Baidas appears to argue that the INS had a duty to schedule him to take the oath once his application was granted, and that their failure to do so constitutes a violation of his legally enforceable rights. Petitioner's Br. at 11. This court does not have sufficient facts before it to determine whether Baidas's application was granted, as he argues, or whether it remains pending. However, as explained below, if the INS did grant Baidas's application and failed to schedule him to take the oath, then it is possible that because the INS violated its own regulations, a claim may be cognizable in habeas corpus. If Baidas's application was not granted, then Baidas is not entitled to the writ of habeas corpus. Accordingly, a remand is required to determine first, the status of Baidas's application, and second, if the application was granted and the INS failed to schedule him to take the oath, whether Baidas's claim is a type which may be heard in a habeas proceeding.

At this time, we cannot say whether the district court has jurisdiction to review Baidas's claim. The district court, in the adopted M.J.R.R., held that it was without jurisdiction to review this claim under 8 U.S.C. § 1503(a), the statute governing proceedings for a declaration of U.S. nationality, which provides that "no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding." Section 1503 arguably is not relevant to this case, because Baidas's argument is not that he is a national, but rather, "that his application for naturalization was granted but INS failed to schedule him for taking the oath of allegiance." Petitioner's Br. at 13. It is therefore clear that Baidas is not seeking a declaration that he is a naturalized citizen, because the taking of the oath is a prerequisite to becoming a naturalized citizen. 8 U.S.C. § 1448. It is at least arguable that there is jurisdiction for this claim under 28 U.S.C. § 2241, as neither AEDPA nor IIRIRA abolished the writ of habeas corpus for aliens seeking to challenge certain legal determinations of the BIA. In order for this type of jurisdiction to exist, however, there must be a claim cognizable under 28 U.S.C. § 2241, which limits the writ to claims that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In addition, as discussed above, "judicial review of final orders of removal is available where the review is limited to pure questions of law and does not touch upon decisions that are under the discretion of the Attorney General." *Moussa*, 389 F.3d at 554. An alien may not challenge a discretionary determination in a habeas petition. *See Gomez v. Bureau of Immigration and Customs Enforcement's Interim Field Office Director*, 315 F. Supp. 2d 630, 633 (M.D. Pa.

2004). This court has not been presented with sufficient facts to determine the status of Baidas's application, nor has it been presented with briefing on the availability of habeas corpus jurisdiction in this context.

According to Baidas, his application was approved, but the INS failed to schedule the oath-taking. According to the INS, Baidas's application remains pending. The INS relies upon the affidavit of Marsha K. Nettles, District Counsel to the INS, which states that she has reviewed "the INS file on petitioner, Abed Mosa Baidas," and that her review "revealed that Abed Mosa Baidas applied for naturalization . . . . However, the application process was not completed because his case was continued pending disposition of outstanding criminal charges against Mr. Baidas. . . . Mr. Abed Mosa Baidas' application was never approved and he was never administered the oath of citizenship to become a United States citizen." The district court's reliance on this affidavit is questionable, because Baidas had put forth evidence that, at a minimum, casts doubt on the truth of the assertion that Ms. Nettles reviewed his file, or alternatively, indicates that the INS was withholding documents from Baidas that could be helpful to his case.[3]

---

[3]Specifically, in his Objections to the Report and Recommendation, Baidas provided the district court with documents indicating that following Baidas's FOIA request for his file, the INS responded on April 24, 2002, that "[a]lthough our indexes reflect the existence of a file, we have been unable to locate it. Because we are not able to locate the record, we will be unable to take any further action on your request." The affidavit of Ms. Nettles was dated August 28, 2002. Although it is possible that Baidas's INS file was located between April 24 and August 28, it should have then been produced pursuant to Baidas's October 2, 2002, Request For Production of Documents. However, Baidas has not provided any further evidence that would enable us to conclude what caused the discrepancy. It is possible that the INS, through inadvertence or otherwise, withheld the file from Baidas; it is also possible that the affidavit of Ms. Nettles is factually incorrect.

We therefore cannot simply assume that Baidas's application was pending, as the district court assumed. On remand, an argument could be made that if Baidas's application had been granted, his rights were violated. Once an alien's application for naturalization has been granted, it appears that the INS may no longer have discretion under its own regulations to refuse to schedule the alien for the taking of the oath.[4]

The most pertinent regulation is 8 C.F.R. § 335.5, which provides:

> In the event that the Service receives derogatory information concerning an applicant whose application has already been granted as provided in § 335.3(a) of this chapter, but who has not yet taken the oath of allegiance as provided in part 337 of this chapter, the Service shall remove the applicant's name from any list of granted applications or of applicants scheduled for administration of the oath of allegiance, until such time as the matter can be resolved. The Service will notify the applicant of the receipt of derogatory information, with a motion to reopen the previously adjudicated application, giving the applicant 15 days to respond. If the applicant overcomes the derogatory information, the application will be granted and the applicant will be scheduled for administration of the oath of allegiance. Otherwise the motion to reopen will be granted and the application will be denied pursuant to § 336.1 of this chapter.

8 C.F.R. § 335.5 (1992). This regulation works in conjunction with 8 C.F.R. §§ 335.3 and 334.5. Section 335.3 provides that once an application has been granted, "[t]he applicant shall be notified that the application has been granted [and] . . . of the procedures to be followed for the

---

[4]Baidas submitted his application on October 10, 1991. *See* Petitioner's Br., Exhibit 4. Although we do not know the exact date on which the application was granted if it was, it would presumably have been after October 10, 1991, but before February 10, 1998, the date on which the INS issued its Notice to Appear. For the most part, the governing regulations at issue changed very little during this period.

administration of the oath of allegiance pursuant to part 337 of this chapter." 8 C.F.R. § 335.3

(1992). Finally, § 334.5, entitled "Amendment of application for naturalization; reopening

proceedings," provides that

> [a]ny substantive amendments which affect the jurisdiction or the decision on the merits of the application will not be authorized. When the Service is in receipt of any information that would indicate that an application for naturalization should not have been granted on the merits, the Service may institute proceedings to reopen the application before admission to citizenship, or to revoke the naturalization of a person who has been admitted to citizenship, in accordance with section 340 of the Act and § 335.5 of this chapter.

8 C.F.R. § 334.5(b) (1992).

Under these regulations, the INS appears not to have discretion simply to revoke an

application once granted, or to refuse to schedule a successful applicatnt for the taking of the oath,

even though information comes to light indicating the application should not have been granted. *See*

*Patel v. INS*, No. 98CV1937 JCH, 2000 WL 298921 (E.D. Mo. Jan. 20, 2000). Such an action

would constitute a "substantive amendment[]," which "will not be authorized." It appears that the

INS must follow the provisions of § 335.5, with the result that the INS must make "a motion to

reopen the previously adjudicated application, giving the applicant 15 days to respond." If the INS

does not have reason to make a motion to reopen, then § 335.3 applies, under which "[t]he applicant

shall be notified that the application has been granted [and] . . . of the procedures to be followed for

the administration of the oath of allegiance pursuant to part 337 of this chapter."

While we have received no briefing on the issue, these regulations appear to provide that once an application has been granted, the decision to schedule the oath is not discretionary. Therefore, if, on remand, the district court determines that Baidas's application was granted, the district court may be faced with a violation of a non-discretionary regulation. It is questionable whether such a violation can form the basis of a petition for writ of habeas corpus, although some authority exists for permitting review. At least one court has held that "section 2241 is limited to claims that the INS has violated the Constitution, or that it has violated the statutory law governing immigration, or its own regulations. In the latter two circumstances, the claim must be one of statutory or regulatory error in the sense that the INS based its decision on a misinterpretation of the statute or regulation at issue." *Builes v. Nye*, 239 F. Supp. 2d 518, 523 (M.D. Pa. 2003) (internal citations omitted); *see also Chong v. District Director*, 264 F.3d 378, 388-89 (3d Cir. 2001); *cf. Nolan v. Holmes*, 334 F.3d 189, 194 (2d Cir. 2003). Although certainly *INS v. St. Cyr* guaranteed that for some types of claims, the writ of habeas corpus is available, it is not clear that *St. Cyr* would require that habeas relief be available for claims alleging only a failure to comply with regulations. According to *St. Cyr*:

> even assuming that the Suspension Clause protects only the writ as it existed in 1789, there is substantial  evidence to support the proposition that pure questions of law like the one raised by the respondent in this case could have been answered in 1789 by a common-law judge with power to issue the writ of habeas corpus.

533 U.S. at 304-05. The issue in *St. Cyr* was one of pure statutory construction; namely, the question of whether a specific portion of IIRIRA should be given retroactive effect. *See id.* at 314-

- 14 -

26. The cases relied upon by the *St. Cyr* Court also appear to be cases of statutory interpretation. We need not decide at this stage whether the scope of "pure questions of law" for *St. Cyr* purposes extends to issues of regulatory interpretation. Although as noted, some cases suggest that interpretational questions regarding regulations may be "pure questions of law" for *St. Cyr* purposes, it could be argued on the other hand that if so, the *St. Cyr* exception would largely swallow the general rule of no review.[5] If Baidas's claim does not fall within the ambit of *St. Cyr*, then permitting review would thwart the intention of Congress, in enacting IIRIRA, to limit the review of certain orders of removal.

If the district court determines that Baidas's application was granted, it must determine whether a challenge to the INS's failure to follow regulations is a claim that may be heard on habeas under *St. Cyr*. We do not decide this difficult issue, given the absence of relevant briefing, the fact that the district court has not considered the issue, and the possibility that the issue will not even be presented should the district court find that Baidas's application for naturalization has not been granted.

The district court's dismissal of the writ of habeas corpus with respect to Baidas's claim that his application for naturalization was granted must therefore be reversed, and the petition remanded,

---

[5]An agency exercises its discretion in deciding to make substantive regulations. *See, e.g.*, *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 290-95 (1974). Congress, it could be argued, did not intend that where an agency attempts to make its exercises of discretion consistent, by promulgating regulations, the agency thereby loses the freedom from judicial review that Congress otherwise gave it.

for the limited purpose of determining whether Baidas's application for naturalization was granted. If not, then this ground does not warrant habeas corpus relief. If the application was granted, contrary to the Nettles affidavit, then the district court must determine in the first instance whether that fact leads to the conclusion that habeas corpus relief is both available and appropriate.

**2.**

Baidas next presents a number of arguments regarding whether his convictions were of the type that would render him removable, and whether the sentences imposed rendered him removable. In its brief, the INS argues that Baidas is collaterally estopped from arguing that his convictions and sentences were insufficient for removal, based on the earlier decision of this court in *Baidas v. Ashcroft*, No. 01-3586 (6th Cir. Aug. 14, 2001). The district court adopted the INS's position that the panel's decision in *Baidas v. Ashcroft* should be given preclusive effect. *See* M.J.R.R. at 8. In the procedural posture of this case, collateral estoppel does apply, and Baidas is precluded from relitigating his claims that he was not convicted of an aggravated felony or two or more crimes of moral turpitude.[6]

Although a dismissal for lack of subject matter jurisdiction is one which, with few exceptions, will not have preclusive effect, such an exception applies in this case. Where a factual determination is essential to deciding jurisdiction, a litigant may in some contexts be collaterally

---

[6]We limit our discussion to collateral estoppel, as the INS wisely does not argue on appeal that claim preclusion should apply. Respondent's Br. at 10.

estopped from relitigating the facts necessary to that conclusion. *See Grudzinski v. Staren*, No. 02-3479, 2004 WL 103014, *3 (6th Cir. Jan. 21, 2004); *Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209-10 (10th Cir. 2001) (dismissal for lack of personal jurisdiction). As discussed above, a panel of this court issued an order dismissing the appeal for lack of jurisdiction because 8 U.S.C. § 1252(a)(2)(C) precludes judicial review of a final order of removal against a criminal alien. *Baidas v. Ashcroft*, No. 01-3586, slip op. at 2 (6th Cir. Aug. 14, 2001). The panel addressed Baidas's contention that he was not a criminal alien because he had not been convicted of an aggravated felony or two or more crimes of moral turpitude, and the panel held that his convictions met the statutory definitions of aggravated felony and crimes of moral turpitude. *Id.* This was done pursuant to the court's jurisdiction to decide jurisdiction. *Id.* Because Baidas's claims before that panel and this panel are identical—that his convictions do not render him removable—and those claims were actually and necessarily litigated as part of the previous panel's determination of its jurisdiction, Baidas is estopped from relitigating them here. Accordingly, Baidas is deemed to have been convicted of an aggravated felony and two or more crimes of moral turpitude, and his arguments to the contrary are without merit.[7]

---

[7]Baidas does not contend that this court could not properly consider the merits of the particular issues resolved in our earlier opinion, and we therefore express no opinion today on whether the earlier panel should have affirmed without even reaching the issues of whether Baidas's convictions met the statutory criteria. It is sufficient that the earlier panel actually made the determinations as a part of its decision.

**3.**

Baidas next argues that the district court erred in rejecting his claim under the Equal Protection Clause. Baidas had argued to the district court that his equal protection rights were violated because aliens admitted legally are treated differently in removal proceedings than are aliens who entered the United States illegally. Baidas does not present any new arguments on appeal. *See* Petitioner's Br. at 19. For the reasons given by the district court, Baidas's arguments fail.

**4.**

Fourth, Baidas claims that under *INS v. St. Cyr*, 533 U.S. 289 (2001), he should be permitted to apply for a discretionary waiver of deportation. Baidas's argument is colorable, but because the disposition of this claim depends upon facts not before us, we must remand. In *St. Cyr*, an alien pled guilty in March of 1996 to a drug crime that made him eligible for deportation (now called removal) as an aggravated felon. 533 U.S. at 293. At the time he pled guilty, which was pre-AEDPA and pre-IIRIRA, St. Cyr was eligible for a waiver of deportation that could be granted at the discretion of the Attorney General under 212(c) of the Immigration and Nationality Act of 1952, codified at 8 U.S.C. § 1182(c) *Id.* Section 212(c) provides that:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section . . . .

- 18 -

8 U.S.C. § 1182(c) (1995). Subsection (a) is the provision under which aliens are excluded, not deported, but the Supreme Court in *St. Cyr* noted that case law had made the discretionary waiver available to "permanent resident alien[s] with a lawful unrelinquished domicile of seven consecutive years" subject to deportation. *St. Cyr*, 533 U.S. at 295 (internal quotation omitted). The discretionary waiver was eliminated by IIRIRA in 1996. *See id.* at 297. The *St. Cyr* Court was concerned that aliens might have pled guilty to crimes that would subject them to deportation because they knew that they were eligible for a waiver, and that a retroactive application of IIRIRA would be problematic. The Court held that "§ 212(c) relief remains available for aliens, like respondent, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Id.* at 326. The Court therefore affirmed the grant of St. Cyr's petition for habeas corpus. This court has since made clear that in addition to aliens being deported for conviction of an aggravated felony, the *St. Cyr* rationale also applies to aliens being deported for conviction of two or more crimes of moral turpitude. *See Thaqi v. Jenifer*, 377 F.3d 500, 503-04 (6th Cir. 2004).

Like St. Cyr, Baidas pled guilty in March of 1996, to two separate charges of violation of probation. The first probation violation plea, with respect to the failure to return rental property conviction, resulted in a sentence of 365 days in jail, possibly later reduced to 336 days in jail. At the same time, Baidas pled guilty to violating his probation on the criminal sexual conduct conviction, and was sentenced to 336 days in jail. The record does not reflect whether his other convictions were the result of guilty pleas or trials.

Baidas's probation violation guilty plea with respect to the failure to return rental property conviction formed the basis of his removal as an aggravated felon. Accordingly, if this were the sole basis for removal, Baidas would be entitled to seek a discretionary waiver of deportation. In ordering Baidas's removal, however, the BIA also held that Baidas was removable as an alien convicted of two or more crimes of moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii) . That section states that "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, *regardless of whether confined therefor* and regardless of whether the convictions were in a single trial, is deportable." (emphasis added). The BIA listed Baidas's qualifying crimes as including: two instances of "NSF Check," one in 1986 and one 1987, with the resulting conviction on Sept. 30, 1991; two counts of attempted third degree criminal sexual misconduct occurring in 1992, with the resulting conviction on Oct. 5, 1995; and the attempted failure to return rental property crime occurring in 1994, with the resulting conviction on Oct. 5, 1995. *In re Baidas*, No. A22 724 139, slip op. at 1-2, 4 (BIA May 11, 2001). Because subsection (ii) does not require confinement, the BIA was not relying on the March 21, 1996, guilty pleas to probation violations that resulted in sentences for the underlying crimes of attempted failure to return rental property and criminal sexual misconduct. Rather, the Board was relying only on the original convictions that resulted in probation, and the NSF check convictions. If any two of these convictions were not the result of guilty pleas, then Baidas is not eligible to seek a discretionary waiver of deportation. Although he could not be removed as an aggravated felon without being permitted to seek the waiver, he could be independently removed for the commission of two or mores crimes of moral turpitude.

Accordingly, on remand, the district court must determine the nature of these convictions. If two or more were not the result of guilty pleas, then Baidas loses this claim. If all or all but one were the result of guilty pleas, then under *St. Cyr*, Baidas may have a right to seek the discretionary waiver of removal, and the writ of habeas corpus may be granted for the limited purpose of permitting him to pursue that right. We do not make this legal determination, however, given the absence of relevant briefing, the fact that the district court has not considered the issue, and the possibility that the issue will not even be presented should the district court find that two or more of the crimes of moral turpitude relied upon by the INS were not the result of guilty pleas.

**5.**

The remainder of Baidas's arguments are either without merit or involve claims not cognizable under 28 U.S.C. § 2241.

**IV.**

For the foregoing reasons, the decision of the district court is REVERSED and the case REMANDED for proceedings consistent with this opinion. All motions pending before this court are DISMISSED as moot.